STATE of Minnesota, Appellant,

v.

Rolan WIEGAND, Lorna Quesette Matthew, Almond Baxter Longley, Respondents.

Nos. C2–00–1137, C4–00–1138, C6–00–1139.

Court of Appeals of Minnesota.

Jan. 16, 2001.

Mike Hatch, Attorney General, St. Paul, MN; and Marvin E. Ketola, Carlton County Attorney, Dennis Genereau, Jr., Assistant County Attorney, Carlton, MN, (for appellant).

Joanna M. Wiegert, Duluth, MN, (for respondents).

Considered and decided by WILLIS, Presiding Judge, SHUMAKER, Judge, and HOLTAN, Judge.*

* Retired judge of the district court, serving as    judge of the Minnesota Court of Appeals by

## OPINION

SHUMAKER, Judge

After stopping a car that had a broken headlight, a police officer walked his police dog around the vehicle while a second officer wrote a warning citation. When the dog signaled the presence of narcotics, the officer found marijuana concealed under the car's hood. On respondents' motions, the district court suppressed the marijuana on the ground that the circumstances of the police conduct were coercive. The state appealed. We reverse.

## FACTS

At about 12:20 a.m. on May 25, 2000, Cloquet police officer Wally Dupuis observed a car driving along Highway 33 with a broken headlight. Pursuant to department policy, he radioed to headquarters that he was going to stop the car and he stated his location. Although Dupuis had not requested a backup, other officers who heard his radio transmission arrived on the scene.

Dupuis spoke with the driver of the car, respondent Rolan Wiegand, and learned that respondent Lorna Matthew, riding in the back seat, owned the car. Respondent Almond Longley was also a passenger.

Wiegand was nervous and shaking; he looked down as he gave Dupuis his driver's license, and his speech was slow. When Wiegand did make eye contact, Dupuis noted that his eyes were glossy. Dupuis asked Matthew if he could search the car and she said, "No."

After running a license check, Dupuis concluded that he would issue a warning for the broken headlight. He asked one of the other officers on the scene to write the citation, while he walked his police dog, trained in narcotics detection, around the car. In two passes around the car, the dog twice alerted Dupuis to narcotics in the area of the right headlight. Dupuis asked Matthew if there were drugs in the

car. She replied that she might have smoked some marijuana but that there were no drugs in the car.

After a third pass with the dog and a third signal at the same place, the officers began to search. They located marijuana in the insulation under the hood of the car, and they arrested the three respondents. The state charged respondents with possession of a controlled substance.

At a hearing on respondents' motions to suppress the marijuana, the district court ruled that, because Matthew did not consent to a search, there was no basis for further detention and the presence of several officers with the dog constituted coercive circumstances. The court ordered the suppression of the marijuana.

## ISSUES

1. Several police officers arrived as backup after they heard a radio transmission that an officer was stopping a vehicle because of a broken headlight. One officer wrote a citation while the original officer used a trained narcotics dog to "sniff" the exterior of the automobile. Were respondents coerced into relinquishing their constitutional right to freedom from unreasonable searches and seizures?

2. Does a canine "sniff" of the exterior of a vehicle constitute a search for purposes of either the federal or Minnesota constitutions, where the district court made no findings that the writing of the ticket was purposefully delayed?

## ANALYSIS

When reviewing pretrial orders concerning the suppression of evidence, we independently review the facts and determine, as a matter of law, whether the district court erred in its decision to suppress the evidence. *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999). On appeal, we accept the district court's findings of fact unless clearly erroneous. *State v. George*, 557 N.W.2d 575, 578 (Minn.1997).

appointment pursuant to Minn. Const. art. VI, § 10.

As appellant, the state "must clearly and unequivocally show" that the decision had a "critical impact" on its ability to prosecute the respondents and that the order constituted error. *State v. Scott*, 584 N.W.2d 412, 416 (Minn.1998) (quotation omitted). Because the district court's ruling had the effect of negating further prosecution, the only issue in this appeal is whether its order was in error. *See id.*

There is no issue as to the propriety of the stop, Dupuis's radio dispatch, the arrival of voluntary backup officers, the number of officers on the scene, the license check, the presence of the dog, the issuance of the citation, or the length of the detention of respondents before the officers found the marijuana. There is nothing in the record to suggest that any aspect of the procedures used by the police was out of the ordinary, even though the district court speculated that it was unusual for one officer to stop a car and a different officer to write a citation. Thus, we find no basis for the court's conclusion that "the circumstances became coercive."

The district court also concluded that when Matthew refused to allow a search the officers' authority to detain the respondents any further ceased and that the officers needed probable cause to walk the dog around the car.

We first note that the assisting officer was in the process of writing the citation as Dupuis walked the dog around the car. Respondents do not contend that they were free to go before the officer completed the citation. Thus, the detention period for that purpose is unchallenged.

Secondly, the police did not need probable cause to walk the dog around the vehicle because a "canine sniff" is not a search. "The fact that officers walk a narcotics-detection dog around the exterior of [a car] * * * does not transform the seizure into a search." *City of Indianapolis, et al., v. Edmond,* —— U.S. ——, ——, 121 S.Ct. 447, 453, —— L.Ed.2d ——, —— (2000) (citing *United States v. Place,* 462

U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). In *United States v. Place,* the Supreme Court had noted the limited intrusiveness of using a dog to sniff objects:

[The action] is so limited in both the manner in which the information is obtained and in the content of the information revealed by the procedure. * * * [that it does] not constitute a "search" within the meaning of the Fourth Amendment.

*Place,* 462 U.S. at 707, 103 S.Ct. at 2644–45; *see also United States v. $404,905.00 in U.S. Currency,* 182 F.3d 643, 647 (8th Cir.1999) (holding that a canine sniff of the exterior of a vehicle on the public street is not a search within the meaning of the Fourth Amendment).

Respondents urge us to interpret the Minnesota constitution as providing more protection against unreasonable searches and seizures than does the federal constitution. The Fourth Amendment to the federal constitution and Article I, Section 10 of the Minnesota constitution are identical and we must acknowledge the persuasive effect of an interpretation of that provision by the highest court in this nation.

[A] decision of the Supreme Court interpreting a provision of the United States Constitution that is identical to a provision of the Minnesota Constitution is of inherently persuasive, although not necessarily compelling, force.

*State v. Carter,* 596 N.W.2d 654, 656 (Minn.1999) (quotation omitted).

We are not persuaded that we should interpret the search and seizure provision of the Minnesota constitution differently from that of the federal constitution. Furthermore, the logical extension of the proposition that a canine sniff of the exterior of personal property on a public street is a search would inevitably require a holding that a human officer may not continue to use his own senses to detect additional wrongdoing while he completes proper po-

lice procedures for a traffic infraction. That would be an absurd result.

Respondents argue the unreasonableness of the detention but fail to show that any aspect of the police procedures was improper.

## DECISION

The police did not act improperly in stopping a car for a broken headlight, doing a license check, issuing a warning citation, and allowing a narcotics dog to sniff the exterior of the car, which led to the discovery of an illegal controlled substance.

**Reversed.**