**STATE of Minnesota, Respondent,**

v.

**Rolan WIEGAND, Lorna Quesette Matthews, Almond Baxter Longley, Petitioners, Appellants.**

Nos. C2–00–1137, C4–00–1138, C6–00–1139.

Supreme Court of Minnesota.

June 13, 2002.

Joanna M. Wiegert, # 214863, Duluth, MN, Scott G. Swanson, Minneapolis, MN, Appellants' Attorneys'.

Mike A. Hatch, Minnesota Attorney General, St. Paul, MN, Marvin E. Ketola, Carlton County Attorney, Dennis Genereau, Jr., # 267776, Assistant County Attorney, Carlton, MN, Respondent's Attorneys'.

Michele R. Wallace, # 262304, Rondoni, MacMillan & Schneider, Ltd., Minneapolis, MN, Teresa Jo Nelson, # 269736, Minnesota Civil Liberties Union, St. Paul, MN, Attorneys for Amicus Curiae MCLU.

## OPINION

RUSSELL A. ANDERSON, Justice.

Appellants Rolan Wiegand, Lorna Quesette Matthews, and Almond Baxter Longley were charged with fifth-degree possession of controlled substance in violation of Minn.Stat. § 152.025, subd. 2(1) (2000). They moved to suppress the evidence obtained as a result of a search of the vehicle they were in, which was conducted after a trained narcotics-detection dog alerted to the presence of narcotics under the hood of the vehicle. Wiegand also moved to suppress the evidence obtained from his person, which was recovered as a result of a pat-down search incident to arrest after discovery of the narcotics under the hood. The district court suppressed the evidence, concluding that the law enforcement officers lacked probable cause to conduct the dog sniff around the exterior of the vehicle, and thus lacked probable cause to search the vehicle. The district court dismissed the charges and the court of appeals reversed, concluding that a dog sniff is not a search and therefore does not require probable cause. *State v. Wiegand,* 621 N.W.2d 476, 478 (Minn.App.2001). While we agree that the dog sniff of the exterior of the motor vehicle in this case was not a search requiring probable cause, we reverse the court of appeals on the basis that the investigative method used by the officers exceeded the permissible scope of a traffic stop for a routine equipment violation in the absence of a reasonable, articulable suspicion of drug-related criminal activity.

A Cloquet police officer observed a car traveling north on Highway 33 at 12:20 a.m. with a burned-out headlight. The officer stopped the car and identified Matthews, the owner of the vehicle, in the back seat, Wiegand, the driver, and Longley in the front passenger seat. As the officer spoke with appellants, two other Cloquet police officers arrived on the scene.[1] The officer who made the stop reported that Wiegand had very slow and quiet speech, was somewhat nervous, was shaking, and had glossy eyes. The officer also testified at the suppression hearing that Wiegand was looking down and was not talking in the officer's direction. On cross-examination, the officer testified that during the stop he did not suspect that Wiegand was under the influence of any drugs, but instead concluded simply that Wiegand was acting suspiciously.

The officer asked Wiegand, and then Matthews, if there were any narcotics in the car, and each responded there were not. The officer requested permission to

---

1. It is Cloquet Police Department policy that, whenever there is a stop, all available units proceed to the scene for the safety of the officer involved.

search the car, and Matthews denied the request. The officer determined not to issue a citation but to issue a warning for the equipment violation, and asked another officer to write the warning so that he could retrieve his dog, trained in narcotics detection, from his patrol car.

The officer walked the dog around the car twice, and each time the dog alerted to narcotics at the front, passenger-side corner of the car. The officer told Matthews that the dog detected narcotics, and she responded that it may have been because she occasionally smokes a marijuana joint in the car. The officer walked the dog around the car a third time, and the dog alerted to the same area. At some point, either preceding or following the third alert, the officer placed the dog in the interior of the vehicle to pinpoint the origin of the smell that had caused the dog to alert to narcotics, and the officers then searched the interior of the vehicle. The dog did not alert to narcotics inside the vehicle, however, and the officers found no narcotics. The officers then opened the hood of the car and discovered four and one-half ounces of marijuana in a plastic bag behind the insulation on the underside of the hood. The officers placed appellants under arrest. During a pat-down of appellants, more marijuana and some cocaine were found on Wiegand. Appellants were charged with possession of controlled substance in the fifth degree, Wiegand with two counts.

On motions to suppress the controlled substance in each case, the district court concluded that there was no probable cause for a search, suppressed the evidence, and dismissed the charges. The court of appeals reversed, concluding that a dog sniff is not a search, and therefore

probable cause is not required to conduct a dog sniff. *Wiegand,* 621 N.W.2d at 478.

## I.

We are asked to determine whether the Fourth Amendment to the U.S. Constitution or Article I, Section 10, of the Minnesota Constitution require probable cause or a reasonable, articulable suspicion of drug-related criminal activity before a narcotics-detection dog may be used around the exterior of a motor vehicle stopped for an equipment violation. This case also presents us with the related issue whether the use of the narcotics-detection dog in this case was within the permissible scope of the limited investigation occasioned by a stop for a routine equipment violation. We review de novo a lower court's ruling on constitutional questions. *State v. Wicklund,* 589 N.W.2d 793, 797 (Minn.1999). We also review de novo a district court's determination of probable cause as it relates to warrantless searches. *Matter of Welfare of G.M.,* 560 N.W.2d 687, 690 (Minn.1997). When reviewing the legality of a search or seizure, an appellate court will not reverse the district court's factual findings unless clearly erroneous or contrary to law. *Id.*

## II.

We first consider whether a dog sniff of a motor vehicle stopped for a routine equipment violation is a search requiring probable cause. In *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the U.S. Supreme Court concluded that a dog sniff of luggage in a public place is not a search that requires probable cause.[2] *Id.* at 707, 103 S.Ct. 2637. The Court reasoned as follows:

**2.** The Court, however, affirmed suppression of the evidence on the basis that detention of the luggage for 90 minutes was unreasonable,

in particular because the agents failed to inform the defendant-respondent where they were taking the luggage, the length of time he

[T]he canine sniff is *sui generis*. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

462 U.S. at 707, 103 S.Ct. 2637. The Court explicitly limited its ruling to the exposure of luggage in an airport, a public place, to a dog sniff, which suggests the possibility that a dog sniff under different circumstances might be treated differently.

Indeed, the analysis of permissible searches and seizures necessarily requires consideration of the particular privacy interests in the place or item to be searched. In the Court's recent decision in *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), the Court reiterated the primacy of the home in the array of protected spaces. The Court held that use of thermal-imaging devices that detect heat in a home from the public street constitutes a search under the Fourth Amendment, in part because the sense-enhancing technology allowed the government to obtain information that it could not have otherwise obtained without physical intrusion.[3] 533 U.S. at 34–35, 121 S.Ct. 2038. While *Kyllo* involved both the home and a piece of technical equipment much different from a dog, its reasoning suggests that a dog sniff of a home might lead a court to conclude that a search requiring probable cause took place.[4]

■■■■■ We consider, then, the nature of the privacy interest in an automobile.[5]

---

might be deprived of his luggage, and how he could retrieve it in the event the suspicion of narcotics was shown to be unfounded. *Place*, 462 U.S. at 709–10, 103 S.Ct. 2637.

**3.** The special concurrence relies heavily on *Kyllo* to conclude that a dog sniff is a search requiring probable cause. *Kyllo*, however, involved a search of the *home* using sense-enhancing *technology*. 533 U.S. at 29–30, 121 S.Ct. 2038. Throughout *Kyllo* the Court limited its decision to the home, and the Court explicitly distinguished searches of other areas. *See id.* at 34, 121 S.Ct. 2038. The Court also noted that the thermal-imaging device was a piece of technology with potential for greater sophistication. *Id.* at 38, 121 S.Ct. 2038. We are not faced with the issue of a dog sniff around a *home*, nor are we faced with an investigative technique involving a piece of *technology* with potential for dramatic technological advancements. We are faced with the issue of a dog sniff in a public place by a dog trained in narcotics detection, as the Court was in *Place* and in *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), and we draw our guidance from those decisions.

**4.** *See, e.g., United States v. Thomas*, 757 F.2d 1359, 1366–67 (2d Cir.1985) (concluding that practice that is not intrusive in public airport may be intrusive when employed at person's home and holding that dog sniff of front door of apartment constituted search requiring probable cause).

**5.** The special concurrence states that "[a]n innocent person who has been subjected to a dog sniff has been searched." However, our decision today is limited to a dog sniff around the exterior of a motor vehicle in a public place by a dog trained in narcotics detection. We do not decide whether a dog sniff of a person's body requires a showing of reasonable, articulable suspicion or probable cause.

While the special concurrence appears to recognize the varying levels of privacy interests in home, automobile, and body, the special concurrence nonetheless appears to conclude that a dog sniff, for any purpose and in any context, is a search requiring probable cause. The privacy protected by the Fourth Amendment is not only a subjective expectation of privacy, but also a level of privacy expectation that society is willing to deem reasonable under the circumstances. *Oliver*

Automobiles constitute "effects" under the Fourth Amendment, and therefore the constitutional standard of reasonableness applies to searches and seizures of automobiles. *Cady v. Dombrowski,* 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). However, the U.S. Supreme Court has determined that the privacy expectation surrounding an automobile is less than that of a home because the automobile generally does not serve as the repository of personal effects. *Cardwell,* 417 U.S. at 590, 94 S.Ct. 2464. The privacy expectation is also diminished because of the significant governmental regulation of vehicles. *South Dakota v. Opperman,* 428 U.S. 364, 368, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). However, "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire,* 403 U.S. 443, 461–62, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). As the Court has recognized, "[a] search, even of an automobile, is a substantial invasion of privacy." *United States v. Ortiz,* 422 U.S. 891, 896, 95 S.Ct.

2585, 45 L.Ed.2d 623 (1975); *see also State v. Goodrich,* 256 N.W.2d 506, 510 (Minn. 1977) (holding privacy interest in automobile constitutionally protected).

However, the U.S. Supreme Court has indicated that the holding from *Place* that a dog sniff is not a search would apply to a dog sniff conducted around the exterior of a motor vehicle. *Edmond,* 531 U.S. at 40, 121 S.Ct. 447.[6] *Edmond* involved a vehicle checkpoint set up to interdict illegal drugs. The Court stated that "an exterior sniff of an automobile does not require entry into the car and is not designed to disclose any information other than the presence or absence of narcotics." *Edmond,* 531 U.S. at 40, 121 S.Ct. 447. The Court continued by stating that, "[l]ike the dog sniff in *Place,* a sniff by a dog that simply walks around a car is 'much less intrusive than a typical search.'" *Id.* (quoting *Place,* 462 U.S. at 707, 103 S.Ct. 2637).

■ Federal courts of appeals addressing dog sniffs of motor vehicles have held

---

*v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). The bald conclusion by the special concurrence that "the level of intrusion resulting from a dog sniff is significant and requires probable cause before the intrusion" is not moored to society's expectations. While individual judges ultimately must give effect to the Fourth Amendment and society's expectations of privacy, we do not operate here on a blank slate—long-standing precedent establishes that the expectation of privacy in an automobile is diminished as compared to a home, *Cardwell v. Lewis,* 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), and the Court in *Place* held almost 20 years ago that a dog sniff was an extremely limited investigative method in terms of its intrusiveness. 462 U.S. at 707, 103 S.Ct. 2637. Thus, the permissibility of the use of dogs in other settings for other purposes must be evaluated based on whether the privacy expectation is one society is willing to deem reasonable, and not on

subjective perceptions of the intrusiveness of the investigative method. Indeed, the approach that the special concurrence would have us take is troubling in that requiring probable cause for all dog sniffs has implications that go beyond drug detection and would implicate the accepted use of dogs to detect, for example, explosives.

6. In *Edmond* the Court held that a highway checkpoint program, whose primary purpose was the discovery and interdiction of illegal narcotics, violated the Fourth Amendment, because stopping the vehicles without probable cause for general crime control effectuates a seizure within the meaning of the Fourth Amendment and must be accompanied by some measure of individualized suspicion. *See* 531 U.S. at 40–42, 48, 121 S.Ct. 447. In response to an argument premised on *Place,* the Court stated that the fact that officers walked a narcotics-detection dog around the exterior of each car did not transform the seizure into a search. *Id.* at 40, 121 S.Ct. 447.

that a dog sniff is not a search requiring probable cause. *See, e.g., United States v. $404,905.00 in U.S. Currency,* 182 F.3d 643, 647 (8th Cir.1999); *United States v. Hunnicutt,* 135 F.3d 1345, 1350 (10th Cir. 1998); *United States v. Holloman,* 113 F.3d 192, 194 (11th Cir.1997); *United States v. Jeffus,* 22 F.3d 554, 557 (4th Cir.1994); *United States v. Seals,* 987 F.2d 1102, 1106 (5th Cir.1993); *United States v. DiCesare,* 765 F.2d 890, 897, *opinion amended on other grounds,* 777 F.2d 543 (9th Cir.1985). We read these authorities, along with *Place* and *Edmond,* to indicate that a dog sniff around the exterior of a motor vehicle located in a public place is not a search requiring probable cause for purposes of the Fourth Amendment.

█ Appellants ask us to hold that Article I, Section 10 of the Minnesota Constitution, textually identical to the Fourth Amendment, requires probable cause before law enforcement may conduct a dog sniff around the exterior of a motor vehicle stopped for a routine equipment violation. We may construe a provision of the Minnesota Constitution to extend greater rights than a comparable provision in the U.S. Constitution, but we will not do so cavalierly. *See State v. Carter,* 596 N.W.2d 654, 657 (Minn.1999); *State v. Risk,* 598 N.W.2d 642, 649 (Minn.1999). A decision of the U.S. Supreme Court interpreting a provision of the federal constitution that is textually identical to a provision of the Minnesota Constitution is of inherently persuasive, although not necessarily compelling, force. *State v. Fuller,* 374 N.W.2d 722, 727 (Minn.1985).

█ On two occasions we have reached conclusions regarding Article I, Section 10

of the Minnesota Constitution that departed from decisions of the U.S. Supreme Court interpreting the substantively identical language of the Fourth Amendment and applying it to the same or similar facts. In so doing, we interpreted the Minnesota Constitution as according greater protection than the Fourth Amendment. In *In re Welfare of E.D.J.,* we departed from Supreme Court precedent regarding when a seizure occurs, concluding that the decision in *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991),[7] represented a sharp departure from previous decisions, and we were not persuaded that there was a need to depart from the pre-*Hodari D.* analysis. *In re Welfare of E.D.J.,* 502 N.W.2d 779, 780, 783 (Minn.1993). One year later, we noted that the decision in *Michigan Department of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), allowing the use of temporary road blocks to investigate driving under the influence, represented a radical departure from precedent. *Ascher v. Comm'r of Pub. Safety,* 519 N.W.2d 183, 186 (Minn.1994). Declining to follow *Sitz,* we reaffirmed on the basis of our state constitution the long-standing requirement in Minnesota that police need an objective individualized articulable suspicion of criminal wrongdoing before making an investigative stop. *Id.* at 187.

However, we perceive no sound basis on which to reject the U.S. Supreme Court's approach to the Fourth Amendment issue presented in this case. The Court's analysis in *Place* was not a radical or sharp departure from precedent. More importantly, that analysis reflects a weighing of

7. In *Hodari D.* the Court concluded that a seizure of a person occurs only when police use physical force to restrain a person or, absent that, when a person submits to a show of authority by the police. 499 U.S. at 625–

26, 111 S.Ct. 1547. By contrast, in Minnesota a seizure occurs when a reasonable person would believe he or she was not free to leave. *E.D.J.,* 502 N.W.2d at 783.

the government's interest and the degree of intrusion on the individual that is consonant with this court's approach to search and seizure analysis under the state constitution. *See, e.g., Ascher,* 519 N.W.2d at 186–87. Specifically, we agree that the unique nature of the investigative dog sniff under the facts of this case was "so limited both in the manner in which the information [was] obtained and in the content of the information revealed" that it does not constitute a search. *Place,* 462 U.S. at 707, 103 S.Ct. 2637. We therefore conclude that a dog sniff around the exterior of a legitimately stopped motor vehicle is not a search requiring probable cause on the basis of either the Fourth Amendment or the Minnesota Constitution.[8] In this case the court of appeals reached the same conclusion and ended its inquiry there, and on that basis it vacated the district court's order to suppress the evidence and dismiss the charges. *Wiegand,* 621 N.W.2d at 478–79. We note, however, that the Court in *Place* did not hold that no level of suspicion at all was required to detain the luggage; rather, the Court concluded that a reasonable, articulable suspicion of criminal activity was required to seize the luggage in order to conduct the dog sniff.

*Place,* 462 U.S. at 702, 103 S.Ct. 2637. In this case, the court of appeals did not consider whether the degree of intrusion attendant to a dog sniff warrants some justification less than probable cause, such as a reasonable, articulable suspicion, for the government action. Because we believe that question must be answered to determine the reasonableness of the law enforcement officer's investigative method under the state and federal constitutions, we turn to that question.[9]

### III.

In *Terry v. Ohio,* 392 U.S. 1, 30–31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court held that officers, on less than probable cause, could conduct a limited search for weapons of persons suspected of criminal activity. The Court in *Place* concluded that it was appropriate to apply the principles announced in *Terry* to the seizure of luggage in an airport for purposes of a dog sniff. *Place,* 462 U.S. at 702, 103 S.Ct. 2637. Likewise, we conclude the *Terry* principles are appropriately applied in this case when a motor vehicle is stopped for a routine equipment violation. *See Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct.

8. The special concurrence acknowledges that federal law would not require probable cause here and so, would decide this case based on the Minnesota Constitution. The ease with which the special concurrence resorts to the Minnesota Constitution is troubling. In our decision in *Fuller,* 374 N.W.2d at 726, we acknowledged that state courts are the first line of defense for individual liberties within the federalist system. However, we do not resort to the Minnesota Constitution whenever we simply would have decided the matter differently. The special concurrence rests primarily on its own perception that a dog sniff is sufficiently intrusive to require probable cause, and does not indicate how the history of our constitution or common law mandates a different result under the Minnesota Constitution. *See Developments in the Law—The Interpretation of State Constitutional Rights,* 95 Harv. L.Rev. 1324, 1360–61

(1982) (unique state considerations such as the common law, tradition, policy, or distinct constitutional rights may support results that diverge from federal standards).

9. While, as the special concurrence notes, two states have relied on their state constitutions in the context of dog sniffs, those courts have applied the reasonable suspicion standard, as the concurrence also recognizes. *See State v. Pellicci,* 133 N.H. 523, 580 A.2d 710, 716–17 (1990); *People v. Dunn,* 77 N.Y.2d 19, 563 N.Y.S.2d 388, 564 N.E.2d 1054, 1058–59 (1990). Thus, neither the special concurrence nor appellants have pointed to any state or federal court that has required probable cause for the use of a drug-sniffing dog on a vehicle, whether based on the U.S. or a state constitution.

3138, 82 L.Ed.2d 317 (1984) (holding routine traffic stop is relatively brief encounter and is analogous to *Terry* stop).

*Terry* authorizes us to balance the nature and quality of the intrusion into the individual's Fourth Amendment interests against the importance of the governmental interests at stake. A person clearly has some expectation of privacy in an automobile. *Ortiz*, 422 U.S. at 896, 95 S.Ct. 2585; *Goodrich*, 256 N.W.2d at 510. We consider, then, the extent to which a dog sniff is an intrusion into that interest. The Court in *Place* held that the manner in which information is obtained through a dog sniff is much less intrusive than a typical search. 462 U.S. at 707, 103 S.Ct. 2637. The Court further explained in *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), that the investigative method used there, which revealed *only* the presence of narcotics and nothing else, was less intrusive than a typical search. 466 U.S. at 123–24, 104 S.Ct. 1652 (citing *Place*, 462 U.S. at 707, 103 S.Ct. 2637). Similarly, a dog trained only in narcotics detection would alert only to narcotics and would not alert to lawful items or even to a weapon or stolen goods—items that a law enforcement officer would detect in an actual search.

However, a dog sniff around a motor vehicle stopped only for a routine equipment violation is intrusive to some degree.[10] A dog sniff detects something that the public generally cannot detect, *cf. Kyllo*, 533 U.S. at 34, 121 S.Ct. 2038, and something that, in this case, was purposefully hidden from view. Given that there is some intrusion into privacy interests by a dog sniff, we hold that an officer cannot conduct a narcotics-detection dog sniff around a motor vehicle stopped for a routine equipment violation without some level of suspicion of illegal activity. While the officer need not have probable cause, the officer may not be motivated by "mere whim, caprice, or idle curiosity." *State v. Pike*, 551 N.W.2d 919, 921–22 (Minn.1996).

What level of suspicion should apply? In some cases, courts have concluded that because *Place* stated that a dog sniff is not a search, no minimal threshold need be met to conduct a dog sniff around the exterior of a motor vehicle when the vehicle is otherwise legitimately detained or when the vehicle is not detained at all, as with a vehicle parked in a public parking lot. *United States v. Ludwig*, 10 F.3d 1523 (10th Cir.1993) (holding that dog sniff conducted around vehicles parked in motel parking lot with permission of motel owner permissible regardless of whether law enforcement had reason to suspect or detain vehicles); *see also Hunnicutt*, 135 F.3d 1345, 1350 (holding that dog sniff does not implicate the Fourth Amendment when conducted around automobile during legiti-

**10.** Other courts have recognized a limit to the authority of law enforcement to pursue even limited investigative techniques and held that the Fourth Amendment was violated when a dog sniff was conducted under certain circumstances. *See, e.g., Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333; *United States v. Winningham*, 140 F.3d 1328 (10th Cir. 1998) (holding that drug dog's leap into interior of van and subsequent alert to narcotics within scope of Fourth Amendment because officer facilitated dog's conduct); *United States v. Fifty–Three Thousand Eighty–Two Dollars in U.S. Currency, $53,082.00*, 985 F.2d 245 (6th Cir.1993) (reasoning in civil forfeiture action that claimants had reasonable expectation of privacy in items carried on their persons such that probable cause was necessary to justify seizure and dog sniff of cash found on claimants at airport); *Thomas*, 757 F.2d at 1366–67 (holding that dog sniff conducted to detect drugs outside apartment door in the absence of a search warrant was illegal search); *United States v. Kirkpatrick*, 5 F.Supp.2d 1045 (D.Neb.1998) (holding evidence suppressed because officer had no reasonable suspicion to support detention and expansion of traffic stop).

mate traffic stop); *Merrett v. Moore,* 58 F.3d 1547, 1553 (11th Cir.1995) (holding that dog sniffs conducted without individualized reasonable suspicion around automobiles legitimately detained at roadblocks did not violate the constitution); *Seals,* 987 F.2d at 1106; *United States v. Morales–Zamora,* 914 F.2d 200, 203 (10th Cir.1990) (holding that dog sniff around vehicles lawfully detained by law enforcement does not require an individualized reasonable suspicion); *Kirkpatrick,* 5 F.Supp.2d at 1059. In these cases the courts focused their attention on whether the law enforcement officer had any reasonable, articulable suspicion to justify the *detention,* rather than on whether the law enforcement officer had a reasonable, articulable suspicion of drug-related criminal activity that justified conducting *the dog sniff.*

On the other hand, some federal courts have concluded that there must be a reasonable, articulable suspicion of drug-related criminal activity before a dog sniff may be conducted. *See United States v. Teslim,* 869 F.2d 316, 323 (7th Cir.1989) (holding reasonable suspicion to stop defendant supported decision to detain baggage for exposure to dog); *United States v. Quinn,* 815 F.2d 153, 159 (1st Cir.1987) (concluding law enforcement required to have reasonable suspicion that car contains narcotics at moment dog sniff occurs); *see also United States v. Winningham,* 140 F.3d 1328, 1330–31 (10th Cir.1998).

In sum, the federal decisions are less than uniform regarding the standard to be applied to dog sniffs of motor vehicles. For our part, we read *Place* and *Terry* and our recognized, albeit limited, privacy right in a motor vehicle to require a reasonable, articulable suspicion of drug-related criminal activity before law enforcement may conduct a dog sniff around a motor vehicle stopped for a routine equipment violation

in an attempt to detect the presence of narcotics. Recognizing the conflict among courts on this issue, however, we also base our decision on the changed scope of the investigation in this case, and we turn to that issue.

## IV.

 The officer initially stopped appellants' car for a burned-out headlight. A limited investigative stop is lawful if there is a particularized and objective basis for suspecting the person stopped of criminal activity. *State v. Smallwood,* 594 N.W.2d 144, 155 (Minn.1999) (citing *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Moreover, the scope of a stop must be strictly tied to and justified by the circumstances that rendered the initiation of the investigation permissible. *Smallwood,* 594 N.W.2d at 155 (citing *Terry,* 392 U.S. at 19, 88 S.Ct. 1868). Law enforcement may continue the detention "as long as the reasonable suspicion for the detention remains * * * provided they act diligently and reasonably." *Smallwood,* 594 N.W.2d at 155 (quoting *State v. Moffatt,* 450 N.W.2d 116, 119 (Minn.1990)). Expansion of the scope of the stop to include investigation of other suspected illegal activity is permissible under the Fourth Amendment only if the officer has reasonable, articulable suspicion of such other illegal activity. *Terry,* 392 U.S. at 20–21, 88 S.Ct. 1868; *United States v. Ramos,* 20 F.3d 348, 352 (8th Cir.1994) (holding consent to search was fruit of illegal detention, as it took place after the original purpose of the stop—a seat belt violation—had been accomplished).

**136**

Several cases deal with a traffic stop that is extended in duration to allow for use of a drug-sniffing dog. *See, e.g., United States v. Dortch,* 199 F.3d 193, 200 (5th Cir.1999) (holding traffic stop illegally extended until drug-sniffing dogs arrived, when no reasonable suspicion defendant trafficking in drugs), *opinion corrected on other grounds by* 203 F.3d 883 (5th Cir. 2000); *United States v. Pruitt,* 174 F.3d 1215, 1221 (11th Cir.1999) (same). In these cases the courts held that extending the stop without reasonable suspicion violates the principles of *Terry* and suppressed the evidence. In another case, when the canine unit was already on the scene, the stop was not extended for a new purpose and the sniff was permissible. *Holloman,* 113 F.3d at 196; *see also Dortch,* 199 F.3d at 200 (noting that if canine search had been performed during initial detention, no constitutional violation).

 Appellants do not argue that the stop in this case was extended in duration beyond that which would have been necessary to issue the warning ticket for the headlight. Because the officer was able to delegate the issuing of the ticket to another officer, the first officer was freed to run the dog around the car within the time necessary to resolve the basis for the initial stop. However, the reasonableness requirement of the Fourth Amendment is not concerned only with the duration of a detention, but also with its scope. *See Terry,* 392 U.S. at 19, 20, 88 S.Ct. 1868 ("The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible," quoting *Warden v. Hayden,* 387 U.S. 294, 310, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (Fortas, J., concurring)); *United States v. Kennedy,* 573 F.2d 657, 659 (9th Cir.1978)

(noting length *and scope* of inquiry is limited by circumstances that prompted the stop). While this court has not previously addressed this issue independently under the Minnesota Constitution, we conclude that Article I, Section 10 of the Minnesota Constitution also imposes a reasonableness limitation on both the duration and the scope of a *Terry* detention. *See State v. Munson,* 594 N.W.2d 128, 135–36 (Minn. 1999) (holding that vehicle search supported by probable cause must nonetheless be reasonable in the scope of the search and detention of the suspects).

Here, the officer had determined a citation was *not* warranted, and the motorist would simply be issued a warning ticket. Thus, the seriousness of the offense being investigated was decidedly minor. *See Moffatt,* 450 N.W.2d at 119 (distinguishing investigation of burglary from that of petty offense in determining reasonableness of detention). We stress that the officer testified he did not suspect appellants were under the influence of anything, nor did he have any indication that they were transporting drugs. Rather, the officer appeared to have used the opportunity of a routine equipment violation, along with the availability of other officers to write a warning ticket, to conduct the dog sniff. We construe the reasonableness requirement of the Fourth Amendment and Article I, Section 10 of the Minnesota Constitution to limit the scope of a *Terry* investigation to that which occasioned the stop, to the limited search for weapons, and to the investigation of only those additional offenses for which the officer develops a reasonable, articulable suspicion within the time necessary to resolve the originally-suspected offense.[11]

11. The special concurrence agrees with our analysis of *Terry* and our conclusion that the

investigation in this case was outside the permissible scope of an investigation pursuant to

■ Thus, in order to lawfully conduct a narcotics-detection dog sniff around the exterior of a motor vehicle stopped for a routine equipment violation, a law enforcement officer must have a reasonable, articulable suspicion of drug-related criminal activity. We believe this is the appropriate application of the search and seizure limitations in the federal and state constitutions to the facts of the case before us.

■ We turn then to the question whether the officers had a reasonable, articulable suspicion of drug-related criminal activity in this case. While the officer testified that Wiegand was evasive, nervous and had glossy eyes, the officer also testified that he did not conclude at the point that he determined to retrieve his dog that the driver was under the influence of anything. The officer simply noted that Wiegand was acting suspiciously, but indicated no reason to suspect drug-related activity. Under these circumstances, acting suspiciously is not an articulable basis to suspect criminal activity. *See State v. Johnson*, 257 N.W.2d 308, 309 (Minn.1977) (concluding that stop is illegal when officer unable to articulate what aroused suspicion). Therefore, we reverse the court of appeals and reinstate the district court's order dismissing all charges against appellants.

Reversed.

PAGE, J., concurring and concurring specially.

I agree that the evidence in this case was properly suppressed, but I reach this result taking a different path. Since 1925, the United States Supreme Court has required probable cause before officers may conduct a warrantless search of an automobile. *Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925). We have likewise consistently required probable cause to search a car without a warrant. *See, e.g., State v. Schinzing*, 342 N.W.2d 105, 110 (Minn.1983); *State v. Coy*, 294 Minn. 281, 286–87, 200 N.W.2d 40, 44 (1972).

The federal courts and this court avoid the force of this long-standing precedent by concluding that a dog sniff of a car is not a search. *See City of Indianapolis v. Edmond*, 531 U.S. 32, 40, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000); *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). The Court rationalizes the holding on the basis that "a sniff by a dog that simply walks around a car is 'much less intrusive than a typical search.'" *Edmond*, 531 U.S. at 40, 121 S.Ct. 447 (quoting *Place*, 462 U.S. at 707, 103 S.Ct. 2637). I believe that the level of intrusion resulting from a dog sniff is significant and requires probable cause before the intrusion in permissible.

Common sense would lead one to conclude that privacy has been invaded when a drug-sniffing dog has been directed to search a person, her purse, or her vehicle. As a dissenting Ninth Circuit judge puts it:

> When using dogs to ferret out contraband, the police are not simply walking around hoping to come across evidence of a crime. Instead, they are investigating. They are trying to find something. They are seeking evidence in hidden places. If this activity does not qualify as a "search," then I am not sure what does.

a *Terry* stop, yet then asserts that an investigation pursuant to a *Terry* stop must also be limited in its methods. Because we decide that the investigation was impermissible in its scope, we do not reach the issue of whether it also exceeded permissible limits under *Terry* in its methods.

*United States v. Beale,* 736 F.2d 1289, 1293 (9th Cir.1984) (Pregerson, J., dissenting). The dog is detecting something about the person that is not otherwise apparent on observation. As a consequence, privacy is invaded and the constitution demands protection.

The level of intrusiveness analysis used by the U.S. Supreme Court in dog-sniff cases is troublesome in another respect. Through technological advances, of which we have likely only scratched the surface, an officer can conduct a search that detects only criminal activity. The Court uses this fact to support the conclusion that no search requiring probable cause occurred in *Place* and *Edmond,* but I fail to see how what is detected makes the search any more or less reasonable. The Court stated recently in *Kyllo,* "The Fourth Amendment protection of the home has never been tied to measurement of the quality or quantity of information obtained." 533 U.S. at 37, 121 S.Ct. 2038. I do not see how the search of a car or a person should be any different. An innocent person who has been subjected to a dog sniff has been searched and can take little comfort in the fact that the dog did not alert—the intrusion is complete regardless of what the dog smelled.

In *Edmond,* the Court also relied on the absence of physical intrusion into the car in a dog sniff. 531 U.S. at 40, 121 S.Ct. 447. However, the Court rejected the same lack of physical intrusion argument in *Kyllo,* where a search using infrared technology did not physically intrude into a home. 533 U.S. at 37–38, 121 S.Ct. 2038. The Court noted that, if the Court was guided by the lack of actual physical intrusion, the eavesdropping prohibited in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), would be permissible, along with many other kinds of intrusions. *Kyllo,* 533 U.S. at 35, 121 S.Ct.

2038. Indeed, the Court rejected the lack-of-physical-intrusion argument as a "mechanical interpretation of the Fourth Amendment." *Id.* Applying that same analysis here, the fact that a dog sniff does not physically intrude into the item being sniffed does not mean that it is not intrusive.

In the context of law enforcement techniques that enhance the senses, the Court also stated in *Kyllo,* "We think that obtaining by sense-enhancing technology any information regarding the interior of the home that could not otherwise have been obtained without physical intrusion into a constitutionally protected area constitutes a search—at least where (as here) the technology in question is not in general public use." 533 U.S. at 34, 121 S.Ct. 2038 (quotation and citation omitted). In this case, the sense-enhancing dog sniff, not in general public use, obtained information regarding the interior of the vehicle that could not have been obtained without physical intrusion—a physical intrusion that would otherwise require probable cause. *See United States v. Ross,* 456 U.S. 798, 809, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (holding search of automobile in absence of a warrant requires probable cause). Thus, if police could not physically intrude behind the insulation on the underside of the hood given the absence of suspicion of narcotics activity, they should not be allowed to employ a dog to accomplish the same objective.

I do not see a distinction between sense-enhancement-by-technology and sense-enhancement-by-canine. The U.S. Supreme Court dismisses the intrusiveness of a dog search by labeling it "sui generis." *Place,* 462 U.S. at 707, 103 S.Ct. 2637. This is convenient, but lacks any persuasive force given that the dog is used to detect the very thing the officers would look for themselves if the Fourth Amendment did

not limit their ability to do so. The Court's approach to the intrusiveness of sense-enhanced searches is inconsistent, at best.

In addition, as the court recognizes, an automobile is an "effect" under the Fourth Amendment, and therefore the constitutional standard of reasonableness applies to searches and seizures of automobiles. *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *see also State v. Goodrich*, 256 N.W.2d 506, 510 (Minn.1977). While we may expect preeminent privacy in the home, automobiles cannot be far behind on the continuum of privacy interests. For the very poor, a car often serves as a temporary or permanent home; for a majority of people, a car is a place where a portion of everyday life is spent. People carry on private phone and in-person conversations in cars. All cars have locks, and car burglar alarms proliferate. Cars are used to transport not only persons, but the many "effects" also encompassed within Fourth Amendment protection. Thus, distinct from luggage in an airport, about which little expectation of privacy remains (*Place*, 462 U.S. at 710, 103 S.Ct. 2637), a car should trigger significant protections against the invasion of privacy by the government conducting an investigation.[1]

Given the privacy interests inherent in an automobile and what I perceive to be a lack of consistency in approach in U.S. Supreme Court cases, I would find adequate and independent grounds under the Minnesota Constitution to hold that privacy interests in an automobile require probable cause to suspect drug-related activity before a dog sniff may be conducted around the exterior of a vehicle. As the court notes, in two previous cases this court has concluded that Article I, Section 10, of the Minnesota Constitution provides greater protection from unreasonable searches and seizures than the Fourth Amendment. *See Ascher v. Comm'r of Pub. Safety*, 519 N.W.2d 183, 186 (Minn. 1994); *In re Welfare of E.D.J.*, 502 N.W.2d 779, 783 (Minn.1993). In addition, other states have departed from the U.S. Supreme Court interpretations of the federal constitution by holding that a dog sniff constitutes a search requiring reasonable suspicion under their state constitutions. *See State v. Pellicci*, 133 N.H. 523, 580 A.2d 710 (1990) (affirming conviction because investigative stop of vehicle was based on suspicion of controlled substances); *People v. Dunn*, 77 N.Y.2d 19, 563 N.Y.S.2d 388, 564 N.E.2d 1054 (1990) (involving use of drug-sniffing dog in apartment building). Because, as set forth above, I believe there are reasonable expectations of privacy in an automobile, and that a dog sniff is an intrusive search, I would hold that an officer must have probable cause to believe that a vehicle contains narcotics before using a drug-sniffing dog to search the vehicle.

The effect of the majority's conclusion that a dog sniff is not so intrusive as to amount to a search requiring probable cause is to strip from *Terry v. Ohio*, 392

---

1. Given the long-standing precedent establishing a privacy interest in automobiles, the conclusion that the dog sniff in this case requires probable cause is not based on "subjective perceptions of the intrusiveness of the investigative technique," as suggested by the court. My conclusion reflects the fact that in the privacy area, judges cannot blindly follow precedent, but must make a judgment of what is reasonable based on assessments of societal expectations. *See Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231 (Minn.1998) (recognizing for the first time a tort for invasion of privacy). This is the first opportunity this court has had to address the intrusiveness of a dog sniff of a car stopped for an equipment violation, and the assessment of societal expectations in this context is thus one of first impression.

U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), its limitations on the permissible methods of investigation. I agree with the majority that an investigation pursuant to a *Terry* stop must be limited in its *purpose* to investigating either the reason the vehicle was stopped or whether the stop poses a threat to officer safety. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (holding that, not only must the scope of an investigatory detention "last no longer than is necessary to effectuate the purpose of the stop," but also, and separately, the stop "must be carefully tailored to its underlying justification."); *Terry*, 392 U.S. at 29, 88 S.Ct. 1868 (holding search "must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer"). In this case, the dog sniff would not help the officers investigate further either the burned-out headlight or the presence of weapons. Thus, the court correctly holds that the investigation in this case was outside the permissible scope of an investigation pursuant to a *Terry* stop.

However, an investigation pursuant to a *Terry* stop must also be limited in its methods. As the U.S. Supreme Court has stated, "the investigative methods employed [in a *Terry* stop] should be the *least intrusive means reasonably available* to verify or dispel the officer's suspicion in a short period of time." *Royer*, 460 U.S. at 500, 103 S.Ct. 1319 (emphasis added). Therefore, by concluding that a dog sniff is not intrusive, the court allows law enforcement to use this method of investigation in a *Terry* stop even though less-intrusive means might verify or dispel the officer's suspicion. To preserve the limited nature of methods of investigation pursuant to *Terry*, the court should reject the temptation to simply conclude that a search is not a search.[2]

For this reason, I concur specially only in the judgment of reversal.

BLATZ, Chief Justice (concurring and concurring specially).

I join in the concurrence and special concurrence of Justice Page.

2. Indeed, it seems that even the most limber legal reasoning cannot avoid what is obvious to most people, including the state. This point is demonstrated by a brief recently submitted by the state in *State v. Litzau*, No C3–00–2099, 2001 WL 1464306, (Minn.App.), *rev. granted* (Minn. Jan. 29, 2002). In this brief, the state repeatedly referred to the use of a German Shepherd to sniff a car as "a search":

> Chief Schmidt arrived just as [Officer] Abbott was asking appellant if they could *search* his car. Chief Schmidt brought his partner Max, a 90–lb. German Shepherd trained in the detection of narcotics. Chief Schmidt and Max began their *search* at the rear of appellant's vehicle and moved toward the front.

Brief for Respondent at 6, *Litzau*, No C3–00–2099, 2001 WL 1464306, (Minn.App.), *rev. granted* (Minn. Jan. 29, 2002) (emphasis added). Thus, the court's decision today is reminiscent of the make-believe world of Alice in Wonderland. As she said, "If I had a world of my own, everything would be nonsense. Nothing would be what it is, because everything would be what it isn't. And contrariwise, what it is, it wouldn't be, and what it wouldn't be, it would." Alice in Wonderland (Walt Disney Pictures 1951).