**STATE of Minnesota, Respondent,**

**v.**

**Andre Lashon CARTER, Appellant.**

**No. A03–1215.**

Court of Appeals of Minnesota.

July 13, 2004.

Mike Hatch, Attorney General, and Susan Gaertner, Ramsey County Attorney, Darrell C. Hill, Assistant County Attorney, St. Paul, MN, for respondent.

Theodora K. Gaitas, Assistant State Public Defender, and Rachel F. Bond, Special Assistant State Public Defender, Faegre & Benson LLP, Minneapolis, MN, for appellant.

Considered and decided by HARTEN, Presiding Judge, ANDERSON, Judge, and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

Appellant challenges the validity of a dog sniff that subsequently served as a basis for the issuance of search warrants, arguing that officers needed a reasonable and articulable suspicion of criminal activity to justify the dog sniff for Fourth Amendment purposes. Because we find no precedent extending restrictions on dog-sniffing evidence to such an extent, we affirm.

## FACTS

In June 2002, St. Paul police officers executed search warrants at the apartment of appellant Andre Lashon Carter, where illegal controlled substances were found, and in two storage units rented by appellant, where officers found a bag containing two firearms: a Norinco 7.62 pistol and a Beretta 9-millimeter pistol. Appellant was charged with one count of second-degree controlled-substance crime in violation of Minn.Stat. § 152.022, subds. 1(1), 3(b) (2002), and one count of possession of a firearm by an ineligible person in violation of Minn.Stat. §§ 624.713, subds. 1(b), 2; 609.11, subd. 5(b) (2002).

The district court denied appellant's subsequent motion to suppress all evidence obtained pursuant to one of the warrants that appellant argued was not supported by probable cause. Particularly, appellant questioned the inclusion in the search warrant applications of dog-sniff evidence indicating that illegal narcotics might be present in the storage unit. After the two counts were severed for trial and the firearm-possession charge was tried, a jury found appellant guilty as charged. Appellant challenges the district court's denial of his motion to suppress and an evidentiary ruling at trial.

## ISSUES

1. Did the district court err in not suppressing items obtained pursuant to a war-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

rant obtained partly through the report of dog-sniff evidence?

2. Did the district court err in determining the relevance of appellant's tape-recorded telephone conversation?

## ANALYSIS

### I.

■ The United States and Minnesota Constitutions protect a person from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Generally, a search is valid only if conducted pursuant to a valid search warrant. *State v. Albrecht*, 465 N.W.2d 107, 108 (Minn.App.1991). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984).

■ The use of dogs to sniff for narcotics is viewed as unique under a Fourth Amendment analysis. *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110 (1983). Noting the limited intrusiveness of the dog sniff, the United States Supreme Court has stated that such an action "is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure ... [that it does] not constitute a 'search' within the meaning of the Fourth Amendment." *Id.* The minimal intrusiveness of the dog sniff is not just limited to the technique, but also to the scope of information retrieved from its use. *Id.* at 707, 103 S.Ct. at 2644. ("[T]he sniff discloses only the presence or absence of narcotics, a contraband item."). Accordingly, it is evident, generally, that because it is not a search, the Fourth Amendment is not offended when a dog sniff is performed in the absence of probable cause. *See State v. Wiegand*, 645

N.W.2d 125, 133 (Minn.2002) (concluding that a dog sniff around the exterior of a stopped motor vehicle is not a search requiring probable cause).

Federal and Minnesota courts have generally upheld the use of dogs to sniff out narcotics in public places. *See Place*, 462 U.S. at 707, 103 S.Ct. at 2644–45 (holding that a dog sniff of luggage in a public place is not a search requiring probable cause); *United States v. $404,905 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir.1999) (holding that a dog sniff of exterior of vehicle on public highway is not a search within the meaning of the Fourth Amendment); *State v. Kolb*, 674 N.W.2d 238, 242 (Minn. App.2004) ("[P]olice need not have reasonable, articulable suspicion of criminal activity in order to conduct a dog sniff of the exterior of the vehicle.").

■ There are limits, however, to the general conclusion that a dog sniff is not a search. For instance, the Minnesota Supreme Court has recognized that there exists a higher reasonable expectation of privacy in one's home than in public places. *See Wiegand*, 645 N.W.2d at 130. But the analysis of permissible searches requires "consideration of the particular privacy interests in the place or item to be searched," rather than application of a bright-line test. *Id.*

Appellant argues that under *Wiegand*, however, use of the dog-sniff evidence is impermissible absent a reasonable, articulable suspicion as to the contents of an enclosed storage unit. In *Wiegand*, officers initially stopped the defendant's vehicle for a routine equipment violation. *Id.* at 128. Without suspecting that the defendant was under the influence of controlled substances, the officers conducted a dog sniff around the vehicle. *Id.* at 128–29. The supreme court held that it is necessary to have "a reasonable, articulable suspicion of drug-related criminal activity be-

fore law enforcement may conduct a dog sniff around a motor vehicle stopped for a routine equipment violation in an attempt to detect the presence of narcotics." *Id.* at 135.

We reject appellant's expansive reading of *Wiegand.* That holding is confined to a case where law enforcement attempts to expand the scope or duration of an investigative stop beyond the investigation of an equipment violation that was the cause for the stop. *Id.* The facts before us in the instant case do not present an investigative stop, and we do not find in *Wiegand* a universal requirement that dog sniffs be limited to cases where a reasonable, articulable suspicion of criminal activity is shown.

■ Finding no widely applicable rule in the holding of *Wiegand,* we necessarily determine the question before us by examining whether appellant has a reasonable expectation of privacy in the area outside his storage unit where the dog·sniff occurred. Although the storage facility at issue is gated and maintained for the use of renters, appellant does not contend that the officers were not entitled to be in the proximity of his storage unit when the dog sniff occurred. Nothing in the record indicates that individuals with access to the storage facility are in any way limited or restricted from the area where the dog sniff occurred. Nor do we find evidence that appellant, as a renter, had the ability to so limit access to the area. Therefore, we conclude that there was no reasonable expectation of privacy in the semi-public area surrounding the entrance to appellant's storage unit where the dog sniff occurred.

We note that there are broader limits to the use of unique detection devices that reveal certain information about the contents of a structure. *See Kyllo v. United States,* 533 U.S. 27, 34–35, 121 S.Ct. 2038, 2043, 150 L.Ed.2d 94 (2001) (holding that use of a thermal-imaging device to detect heat levels in a home constitutes a search for Fourth Amendment purposes). But we find no present authority for recognizing a legitimate privacy interest in the circumstances here, where (1) there is no intrusion inside a building; (2) it is not asserted that the structure at issue is part of a home; and (3) no question is raised as to the legitimacy of the police presence near the structure.. The district court did not err in denying appellant's request to suppress evidence obtained by executing a search warrant that was obtained partly on dog-sniff evidence gathered in this case.

## II.

■ Appellant asserts that the district court also erred in finding relevance in and admitting evidence of appellant's tape-recorded telephone conversation from jail. "Evidentiary rulings involving the relevancy of evidence are generally left to the sound discretion of the trial court." *State v. Horning,* 535 N.W.2d 296, 298 (Minn.1995). "The party claiming error has the burden of showing both the error and the resulting prejudice." *Id.* The district court's determination of relevancy considers "whether the evidence logically or reasonably tends to prove or disprove a material fact in issue, or tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact." *Id.* An evidentiary error warrants a new trial only if it is prejudicial. *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990).

Appellant's argument is directed at the transcript of a telephone call that he made to his mother from jail shortly after his arrest. The tape-recorded conversation occurred prior to the execution of the search warrant on appellant's nearby stor-

age unit and was apparently introduced to prove appellant's knowledge of contraband inside the unit. Appellant is recorded as stating that his mother needed to check on a series of items, including his car and phones, and get to and "move around in that store on New York." Appellant argues that the statements made during the conversation were "too vague and too speculative" to allow the jury to make reasonable inferences from their content.

At trial, Officer Michael Conroy testified that he reviewed inmate phone calls for evidence and explained that appellant in his call made three references to moving items in the "store on New York." Officer Conroy stated that he took appellant's statements as referring to the storage facility where the search warrant was executed because the facility's entrance was less than half a block away from York Avenue.

Although the entire conversation appears deliberately vague on appellant's part, when viewed in connection with Officer Conroy's testimony regarding the location of the storage facility, the district court did not abuse its discretion in finding the statements relevant to appellant's knowledge. The tape-recorded conversation properly supports a reasonable inference or presumption regarding appellant's knowledge of the contents of his storage unit. Further, even if its admission was in error, any reasonable inferences that could be made by the jury did not result in significant prejudice.

### DECISION

Because we find that appellant showed no reasonable expectation of privacy in the area surrounding a storage facility, and because the district court did not abuse its discretion in admitting evidence of appel-

lant's tape-recorded telephone conversation, we affirm.

**Affirmed.**