**STATE of Minnesota, Respondent,**

v.

**Scott Evan DAVIS, Appellant.**

**No. A05–857.**

Court of Appeals of Minnesota.

April 11, 2006.

Mike Hatch, Attorney General, St. Paul, MN; and James C. Backstrom, Dakota County Attorney, Vance B. Grannis, III, Assistant County Attorney, Hastings, MN, for respondent.

Derek A. Patrin, Meaney & Patrin, P.A., Hopkins, MN, for appellant.

Considered and decided by LANSING, Presiding Judge; SHUMAKER, Judge; and HALBROOKS, Judge.

## OPINION

SHUMAKER, Judge.

After receiving complaints of odors of drugs from apartment-complex employees, law-enforcement officers performed a dog sniff in a common hallway of appellant's apartment. The dog alerted to the odor of illegal drugs. The officers then obtained and executed a search warrant and seized drugs and drug paraphernalia from appellant's apartment. The district court denied appellant's motion to suppress the evidence seized from the search. On appeal, appellant argues that the dog sniff was a search that required probable cause or, alternatively, that a reasonable, articulable suspicion did not exist. We affirm.

## FACTS

In August 2004, employees of the apartment complex in which appellant Scott Evan Davis resided informed agents of the Dakota County Drug Task Force that they had observed activated growing lights in Davis's apartment and believed he was growing marijuana. They also stated that they had attempted to investigate a water leak inside Davis's apartment but that he did not permit them to enter. According to the search-warrant application, a drug-sniffing dog was brought to the apartment complex to "investigate the odor of narcotics on the first floor" and alerted to the presence of illegal drugs at the "threshold of [Davis's] apartment." Based upon the observations of the apartment-complex employees and the dog's alert, agents were issued a no-knock search warrant. The agents executed the warrant on Davis's apartment using a key provided by apartment-complex management. The agents discovered and seized marijuana, drug paraphernalia, a mushroom-growing kit, and a handgun. Davis was arrested and charged with controlled-substance crimes for possession of marijuana and drug paraphernalia.

Davis brought a motion to suppress the evidence, alleging that it was obtained in violation of his federal and state constitutional rights. The district court denied Davis's motion and concluded that there was (1) a reasonable, articulable suspicion of illegal activity to support "using a drug-sniffing canine in the common hallway outside [Davis's] apartment" and (2) adequate probable cause, based on the dog sniff and the employees' observations of the growing lights, to support the issuance of a search warrant of his apartment. Davis then entered a not-guilty plea, submitted the matter to the district court under *State v.* *Lothenbach*, 296 N.W.2d 854 (Minn.1980), and was found guilty of controlled-substance crimes for possession of marijuana and drug paraphernalia. The district court imposed sentence, then stayed the sentence pending appeal, and Davis appealed the district court's denial of his motion to suppress the evidence.

## ISSUES

1. Does use of a drug-sniffing dog in the common hallway of an apartment building constitute a search that requires probable cause under the federal and state constitutions?

2. If probable cause is not required, did a reasonable, articulable suspicion exist to conduct the dog sniff in the common hallway of the apartment building?

## ANALYSIS

### I.

Davis first argues that probable cause must exist before law enforcement can conduct a dog sniff "at [his] apartment door." The district court decided that the "more persuasive cases have found that a canine sniff of a common hallway in an apartment building has Fourth Amendment implications and must be supported by reasonable articulable suspicion." Davis bases his argument on the premise that a residence has a greater privacy protection against searches than a seized vehicle or a storage unit. He concludes that, because probable cause should be required, the warrantless dog sniff violated his federal and state constitutional rights, and the evidence seized as a result of the warrant should be suppressed.

When reviewing pretrial orders on motions to suppress evidence, appellate

courts "independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris,* 590 N.W.2d 90, 98 (Minn.1999). Under the Fourth Amendment, whether a dog sniff is a search depends on (1) the level of a person's expectation of privacy in the place where the sniff occurs and (2) the level of intrusiveness of the sniff. *State v. Carter,* 697 N.W.2d 199, 207 (Minn.2005) (citing *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110 (1983) (holding that a dog sniff of the exterior of luggage in a public airport does not constitute a search under the Fourth Amendment)). The intrusiveness of a dog sniff is minimal because it does not require exposure of the contents of the item being searched or noncontraband items that would otherwise remain hidden from view. *Place,* 462 U.S. at 707, 103 S.Ct. at 2644–45. It is also "much less intrusive than a typical search ... [because it] discloses only the presence or absence of narcotics, a contraband item." *Id. See also Illinois v. Caballes,* 543 U.S. 405, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005) (reaffirming *Place's* labeling of a dog sniff as "sui generis" and ruling that a "dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment").

The expectation-of-privacy element, however, has been subjected to fine line drawing. The United States Supreme Court has found diminished expectations of privacy in luggage in a public airport and in a barn that is outside of a home's "curtilage." *See Place,* 462 U.S. at 706–07, 103 S.Ct. at 2644; *United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987). The Eighth Circuit

Court of Appeals has concluded that a person does not have a "reasonable expectation of privacy in the hallway of [an] apartment building." *United States v. Eisler,* 567 F.2d 814, 816 (8th Cir.1977). "[C]ommon hallways ... [are] available for the use of residents and their guests, the landlord and his agents, and others having legitimate reasons to be on the premises." *Id.* The *Eisler* court found irrelevant the fact that the building had secure entrances—the "locks on the doors to the entrances of the apartment complex were to provide security to the occupants, not privacy in common hallways." *Id. See also United States v. McGrane,* 746 F.2d 632, 634 (8th Cir.1984) (relying on *Eisler* and holding that a person has no expectation of privacy in a "common area ... accessible to all tenants and the landlord" of an apartment building).

We conclude that a dog sniff in a common hallway is not a Fourth Amendment search. Davis does not have a reasonable expectation of privacy in the common hallway of the apartment building. The dog sniff's level of intrusiveness was minor. First, the search-warrant application refers to "the odor of narcotics on the first floor." This observation was made before any dog sniff and suggests that the odor of narcotics existed in the hallway and was detectable through a human being's sense of smell. Second, we disagree with Davis's characterization that the dog "detect[ed] the presence of illegal narcotics inside [Davis's] home." The evidence in the record shows that the dog sniffed only in the common hallway. The detected scent may have originated from *within* Davis's apartment, but it was detected *outside* the apartment by the dog.

Davis relies on *United States v. Thomas,* 757 F.2d 1359 (2d Cir.1985), to support his

proposition that the dog sniff required probable cause. *Thomas* held that "because of [a defendant's] heightened expectation of privacy inside his [apartment], the canine sniff at his door constituted a search." *Id.* at 1367. We disagree with the reasoning of *Thomas,* a decision which has been widely discredited by several courts. *See, e.g., United States v. Reed,* 141 F.3d 644, 649–50 (6th Cir.1998) (noting that "*Thomas* seems to stand alone in its pronouncement that a canine sniff may constitute an unreasonable search" and "ignores the Supreme Court's determination in *Place* that a person has no legitimate privacy interest in the possession of contraband"); *United States v. Lingenfelter,* 997 F.2d 632, 638 (9th Cir.1993) (providing that *Thomas* "rests on an incorrect statement of the law"); *United States v. Colyer,* 878 F.2d 469, 475 (D.C.Cir.1989) (stating that the "correctness of the *Thomas* decision is called into question by its assertion that the defendant 'had a legitimate expectation that the contents of his closed apartment would remain private' "); *State v. Miller,* 256 Wis.2d 80, 647 N.W.2d 348, 351 n. 5 (2002) (stating that *Thomas* is "questionable given *Place*'s broad rationale").

■ But our analysis does not end with the Fourth Amendment. We must also determine whether the dog sniff was a search under the Minnesota Constitution.[1] The Minnesota Supreme Court has addressed dog sniffs on two recent occasions. It first ruled that a dog sniff of the exterior of an automobile legitimately stopped for a traffic offense is not a search requiring probable cause. *State v. Wiegand,* 645 N.W.2d 125, 133 (Minn.2002). The court noted that the privacy expectation surrounding an automobile is less than that of a home and that "an exterior sniff of an automobile does not require entry into the car and is not designed to disclose any information other than the presence or absence of narcotics." *Id.* at 131 (quoting *City of Indianapolis v. Edmond,* 531 U.S. 32, 40, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000)). But the supreme court also noted that a dog sniff "detects something that the public generally cannot detect" and that there is "some intrusion into privacy interests." *Id.* at 134. It concluded that an officer cannot conduct a dog sniff "around a motor vehicle stopped for a routine equipment violation without some level of suspicion of illegal activity. While the officer need not have probable cause, the officer may not be motivated by 'mere whim, caprice, or idle curiosity.' " *Id.* (quoting *State v. Pike,* 551 N.W.2d 919, 921–22 (Minn.1996)). The court concluded that an "officer must have a reasonable, articulable suspicion of drug-related criminal activity" to lawfully conduct a dog sniff around the exterior of a motor vehicle. *Id.* at 137. The majority specifically rejected the special concurrence's "bald conclusion . . . that the 'level of intrusion resulting from a dog sniff is significant and requires probable cause.' " *Id.* at 131 n. 5.

In 2005, the supreme court addressed a dog sniff around the exterior of an individual storage unit at a self-storage facility. *State v. Carter,* 697 N.W.2d 199 (Minn.

**1.** "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized." Minn. Const. art. 1, § 10.

2005).[2] The court stated that "the expectation of privacy under the Fourth Amendment is less for a storage unit than for a home" because the "unit is not a place where a person seeks refuge or conducts frequent personal activities." *Id.* at 209. It concluded that a "dog sniff in the area immediately outside a self-storage unit is not a search under the Fourth Amendment." *Id.* But the supreme court also concluded that the dog sniff was a search under the Minnesota Constitution that required a reasonable, articulable suspicion of drug-related activity. "[A] person's expectation of privacy in a self-storage unit is greater for purposes of the Minnesota Constitution than it has been determined to be under the Fourth Amendment." *Id.* at 210–11.

> [A] narcotics detection dog may be deployed to test for the presence of narcotics [in the area outside a storage unit] where:
>
> 1. the police are able to articulate reasonable grounds for believing that drugs may be present in the place they seek to test; and
>
> 2. the police are lawfully present in the place where the canine sniff is conducted.

*Id.* at 212. This standard properly balances a "person's privacy interests against the public's interest in effective criminal investigations." *Id.* at 211.

We conclude that a dog sniff in the common hallway of an apartment building is a search under the Minnesota Constitution that requires only a reasonable, articulable suspicion. This conclusion is compelled by the supreme court's statement that the "permissibility of the use of dogs in other settings for other purposes must be evaluated based on whether the privacy expectation is one society is willing to deem reasonable, and not on subjective perceptions of the intrusiveness of the investigative method." *Wiegand,* 645 N.W.2d at 131 n. 5. A person does not have a reasonable expectation of privacy in the common hallway of an apartment building.

Davis relies on the United States Supreme Court's decision in *Kyllo v. United States,* 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), to support his argument that probable cause is required for a dog sniff in a common hallway. *Kyllo* held that the use of a thermal-imaging device to detect heat levels inside a home was a search under the Fourth Amendment that

---

**2.** In *Carter,* the supreme court first "examine[d] whether evidence other than the results of the dog sniff provided a substantial basis for probable cause supporting the warrant for the storage-unit search." 697 N.W.2d at 204. If independent probable cause existed, the court "would affirm appellant's conviction and save the constitutional questions concerning the dog sniff for another day." *Id.* The court stated that it would "look only to the information presented in the affidavit" accompanying the search warrant. *Id.* The supreme court noted that the three factors other than the dog sniff listed in the search-warrant application (appellant's criminal record, a police officer's earlier observations and suspicions, and the storage-facility manager's statement regarding appellant's rental of and frequent visits to the storage unit) were not enough, under the totality of the circumstances, to establish the " 'direct connection' between the factors and the site" needed for probable cause. *Id.* Here, four factors exist: Davis's criminal record, statements regarding the growing lights in Davis's apartment, Davis's refusal to permit entry by the employees, and the search-warrant application's statement that the drug-sniffing dog was brought to "investigate the odor of narcotics on the first floor." Because neither party briefs whether these facts constitute probable cause without the dog sniff, we decline to address it on appeal. *See Melina v. Chaplin,* 327 N.W.2d 19, 20 (Minn.1982) (stating that issues not briefed on appeal are waived).

required probable cause. *Id.* at 40, 121 S.Ct. at 2046. In *Wiegand,* the Minnesota Supreme Court noted that the reasoning of *Kyllo* "suggests that a dog sniff of a home might lead a court to conclude that a search requiring probable cause took place." 645 N.W.2d at 130. *Kyllo,* however, involved an investigative technique that detected infrared radiation inside a home. 533 U.S. at 29, 121 S.Ct. at 2041. Here, the dog detected the odor of narcotics that emanated outside Davis's apartment. There was no intrusion into the interior of Davis's apartment. Rather, his illegal activity inside manifested itself through an odor that had escaped into a common area.

## II.

■ Alternatively, Davis argues a reasonable, articulable suspicion did not exist for a dog sniff. The district court ruled that the information received from the apartment-complex employees provided a reasonable, articulable suspicion to justify the sniff.

■ Reasonable, articulable suspicion is determined by reviewing the totality of the circumstances. *State v. Martinson,* 581 N.W.2d 846, 852 (Minn.1998). A police officer must "articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *Id.* at 850. "The principal components of a determination of reasonable suspicion will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *Id.* Moreover, the "officer must have a reasonable, articulable suspicion of drug-related criminal activity" to lawfully conduct a dog sniff. *Wiegand,* 645 N.W.2d at 137.

■ The law-enforcement officer first learned from employees of the apart-ment complex that activated growing lights had been observed in Davis's apartment and that Davis would not permit their entry into his apartment to investigate a possible water leak. Private-citizen informants are "presumed to be reliable." *Marben v. State, Dep't of Pub. Safety,* 294 N.W.2d 697, 699 (Minn.1980). "When evaluating tips, courts are to 'make a practical, common-sense decision whether, given all the circumstances ... including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Burbach,* 706 N.W.2d 484, 490 (Minn.2005) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The tip "must provide at least some specific and articulable facts to support the bare allegation of criminal activity." *Rose v. Comm'r of Pub. Safety,* 637 N.W.2d 326, 329 (Minn. App.2001). The employees provided specific information that they had observed activated growing lights inside Davis's apartment and believed he was growing marijuana. This is more than supplying "hearsay evidence"; the employees had physically observed the activated growing lights. Moreover, the search-warrant application indicates that a person had detected the odor of narcotics on the first floor of the apartment complex. This evidence provides a reasonable, articulable suspicion of drug-related activity that is not based on the officer's hunch, and the dog sniff did not violate Davis's rights under the Minnesota Constitution.

Davis argues that the presence of activated growing lights could only raise a hunch of drug-related activity and is no different than a marijuana symbol on a key chain. *See State v. Tomaino,* 627 N.W.2d 338, 341 (Minn.App.2001). A key chain

has no plausible link to drug-related activities. Growing lights, however, are used in drug-related activities. *See State v. Olson,* 482 N.W.2d 212, 214 (Minn.1992) (growing lights used to grow marijuana in a barn); *State v. Velishek,* 410 N.W.2d 893, 895 (Minn.App.1987) (growing lights used to grow marijuana in a basement). Davis also argues that the apartment-complex employees observed only growing lights but not the "presence of any illegal drugs or paraphernalia." An informant, however, is not required to observe criminal activity. The informant only needs to provide facts sufficient to support a "bare allegation of criminal activity." *Rose,* 637 N.W.2d at 329.

We note the difficulty under which law enforcement operates in attempting to determine whether a dog sniff is a search under the federal or state constitutions. Perhaps our decision today offers clear guidance in the context of an apartment complex: a dog sniff in the common hallway of an apartment is permissible so long as law enforcement has a reasonable, articulable suspicion of drug-related activity.

## DECISION

The dog sniff in the common hallway of the apartment complex was not a search under the Fourth Amendment. The dog sniff was a search under the Minnesota Constitution that required a reasonable, articulable suspicion of drug-related activity. A reasonable, articulable suspicion existed from the information provided by the apartment-complex employees that appellant had activated growing lights in his apartment.

**Affirmed.**