SMITH, JOHN, Judge
(dissenting).
The majority concludes • that the front door of a condominium unit in a multi-unit building is not’curtilage subject to Fourth Amendment protection and that a dog sniff of the seam of the front door only requires reasonable articulable suspicion of criminal activity. I respectfully, disagree. In my view, .the Supreme Court’s decision in Florida v. Jardines, — U.S. -, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013), abrogates State v. Davis, 732 N.W.2d 173 (Minn.2007). A trained drug-detection dog permits officers to obtain information about the inside of a home. A dog sniff of the door seam was a search under the Fourth Amendment, regardless of whether it occurred in the common hallway of the condominium building. I would reverse because the officers needed probable cause to conduct the dog sniff, and the dog sniff was essential to probable cause to issue the search warrant.
*622 The Fourth Amendment protects “persons, houses, papers, and effects.” U.S. Const, amend. IV. The protection of the Fourth Amendment extends to the curti-lage, which is the area immediately surrounding a dwelling. United States v. Dunn, 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987). In Jardines, the Supreme Court held that the front porch of a single family home is the curti-lage because it “is the classic exemplar of an area adjacent to the home and to which the activity of home life extends.” 133 S.Ct. at 1416 (quotation omitted). The majority relied on the Fourth Amendment’s “property-rights baseline” to conclude that the government’s use of a trained police dog to intrude on the porch, which is intimately connected to the activities of the home, was a search within the Fourth Amendment. Id. at 1417-18 (“That the officers learned what they learned only by physically intruding on Jardines’ property to gather evidence is enough to establish that a search occurred.”).
I also believe that the purpose of the éntry by the police, assuming it was impliedly consensual, was not merely to make a casual visit but was made with the express purpose of conducting a search. “The scope of a license — expréss or implied — is limited not only to a particular area but also to a specific purpose,... Here, the background social norms that invite a visitor to the front door do not invite him there to conduct a search.” Id. at 1416. It makes little sense that a person who owns or lives in a condominium building has less protection than those living in a private dwelling.
Although the majority in Jardines did not reach the privacy issue because it felt it was unnecessary, see id. at 1417,1 mention it here to accentuate my concern with the majority viewpoint in this case. The concurring opinion in Jardines reached the same conclusion as the majority of that court but relied on privacy rather than property rights: the right to retreat into one’s home “and there be free from unreasonable governmental intrusion,” the right to prevent “police officers from standing in an adjacent space and trawling for evidence with impunity,” and the “heightened” expectations of privacy “in the home and the surrounding area.” Id. at 1418 (Kagan, J., concurring) (quotations omitted). The concurring opinion recognized that property and privacy concepts “align” when the home is involved. Id. at 1419. The only divergence between the property and privacy analysis is that Kyllo v. United States, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), controls the privacy analysis. Id. In that case, the government aimed a thermal-imaging device at a private home from a public street to detect heat emanating from the home, which indicated a marijuana grow operation. Kyllo, 533 U.S. at 29-30, 121 S.Ct. at 2041. Kyllo held that “obtaining by sense-enhancing technology any information regarding the interior of the home that could not otherwise have been obtained without physical intrusion into a constitutionally protected area constitutes a search — at least where (as here) the technology in question is not in general public use.” Id. at 34, 121 S.Ct. at 2043 (quotation omitted).
In Jardines, the concurring opinion’s privacy analysis relied on Kyllo to conclude that using a trained drug-detection dog, which is “not in general public use,” to discern the presence of drugs within a home “violates our ‘minimal expectation of privacy’ — an expectation ‘that exists, and that is acknowledged to be reasonable.’ ” 133 S.Ct. at 1419 (Kagan, J., concurring) (quoting Kyllo, 533 U.S. at 34, 121 S.Ct. at 2043). This is true even when the police have committed no trespass in order to use .the “device.” See id. (noting that in Kyllo *623 the police “committed no trespass” when they used the thermal-imaging device from a public street).
In Davis, the Minnesota Supreme Court considered whether a dog sniff in a common hallway of an apartment building violated article I, section 10 of the Minnesota Constitution. 732 N.W.2d 173. The supreme court concluded that the police were lawfully in the hallway, there was no evidence that the building was- limited by a locked door, and Davis did not show “that he had an expectation of privacy in the common hallway in addition to that expectation of privacy he had inside his residence.” Id. at 179. The supreme court reasoned that an apartment “tenant must expect that other people will lawfully be in the hallway and be able to smell odors emanating into the public space,” and that walking a dog in the apartment hallway was a minimal intrusion because the dog could only detect the odor of illegal narcotics emanating from inside of the residence. Id. at 180. “Accordingly, [the supreme court held] that the police needed only reasonable, articulable suspicion that Davis was engaged in illegal drug activity, rather than probable cause, to conduct the dog sniff in the common hallway outside Davis’s apartment door.” Id. at 182. The supreme court concluded that the police had reasonable suspicion that Davis had illegal drugs in his apartment. Id. at 183.[4]
In treating a dog sniff as a minimal intrusion, the Minnesota Supreme Court in Davis relied on United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-45, 77 L.Ed.2d 110 (1983), and Illinois v. Caballes, 543 U.S. 405, 409-10, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005). Id. at 179-80. But different privacy interests are at stake in those cases: Place involved a seizure of luggage, i.e. personal effects, located in a public place, and Caballes involved a dog sniff of a motor vehicle lawfully stopped for a traffic violation. See Caballes, 543 U.S. at 406, 125 S.Ct. at 836; Place, 462 U.S. at 699, 103 S.Ct. at 2640. The dog sniff in this case was of appellant’s home. And both the majority and concurring opinions in Jardines draw á firm line at the home. See Jardines, 133 S.Ct. at 1414 (stating “the home is first among equals”); see also id. at 1419-20 (Kagan, J., concurring) (citing Kyllo, 533 U.S. at 34, 121 S.Ct. at 2043) (stating that using “sense-enhancing tool” to explore details of the home that would not otherwise have been knowable is a search that is presumptively unreasonable without a warrant (quotation omitted)).
Additionally, the Minnesota Supreme Court distinguished the thermal-imaging device used in Kyllo from a drug-sniffing dog because the dog was only able to detect “the odor of illegal narcotics emanating from the inside of [the] residence.” Davis, 732 N.W.2d at 179. Contrary to the state constitutional analysis in Davis, the Supreme’ Court makes no distinction between illegal and innocent activity when it comes to the home. For example, the majority and concurring opinion in Jar-dines do not distinguish between a thermal-imaging device and a trained drug-detection dog.. Compare Jardines, 133 S.Ct. at 1417 (noting Kyllo was concerned with government use of devices to intrude on details of the home, and rejecting state’s argument “that forensic dogs have *624 been commonly used by police for centuries” as irrelevant), with 133 S.Ct. at 1419 (Kagan, J., concurring) (comparing thermal-imaging device, a “sense-enhancing tool,” to a drug-detection dog because both are devices used to “explore details of the home” that would not otherwise have been apparent (quotations omitted)). Also, in Kyllo, the Supreme Court made no distinction between heat radiating off the home and surveillance inside the walls of the home. 533 U.S. at 36, 121 S.Ct. at 2044. Indeed, the Supreme Court acknowledged that “[t]he Fourth Amendment’s protection of the home has never been tied to measurement of the quality or quantity of information obtained.” Id. at 37, 121 S.Ct. at 2045. “In the home, ... all details are intimate details, because the entire area is held safe from prying government eyes.” Id. (emphasis omitted);
In my view, the Davis court’s interpretation of article I, section 10 of the Minne-sqta Constitution as authorizing use of a drug-detection dog in a common hallway of an apartment building based only on reasonable articulable suspicion affords Minnesota citizens less protection than the Fourth Amendment. ' “The Federal Constitution guarantees only a minimum slate of protections; States cari and do provide individual rights above that constitutional floor.” Kansas v. Carr, — U.S. -, 136 S.Ct. 633, 648, 193 L.Ed.2d 535 (2016) (Sotomayor, J., dissenting). A state “may grant its citizens broader protection than the Federal Constitution requires by enacting appropriate legislation or by judicial interpretation of its own Constitution.” Danforth v. Minnesota, 552 U.S. 264, 288, 128 S.Ct. 1029, 1046, 169 L.Ed.2d 859 (2008).
Because a trained drug-detection dog is not in general public use. and was used by the police to “explore details of the home that would previously have been unknowable without physical intrusion,” Kyllo, 533 U.S. at 40, 121 S.Ct. at 2046, I would conclude that the dog sniff in this case was a search requiring a warrant under the Fourth Amendment, even when conducted from the common hallway of appellant’s condominium.
In the alternative, I would follow the analysis of other jurisdictions and conclude as a matter of law that the door seam of a condominium unit in a multi-unit building is within the curtilage of the residence and is protected by the Fourth Amendment. See People v. Burns, 401 Ill.Dec. 468, 50 N.E.3d 610, 619-21 (Ill.2016) (concluding that landing in front of defendant’s apartment was within .curtilage, where apartment building was locked and not accessible to the general public); see also State v. Rendon, 477 S.W.3d 805, 810 (Tex.Crim.App.2015) (concluding curtilage extended to front-door threshold in semi-private landing of apartment home). The multi-unit condominium building in this case was secure and only accessible with a key. Additionally, in a condominium building, unlike in an apartment building, the owner of each unit has exclusive ownership and possession, as well as an undivided interest in. the common areas. Minn.Stat. §§ 515.05, .06(a), (b) (2014).[5] I therefore conclude that because appellant had a property interest in the immediate area surrounding his door, the dog sniff of the door seam conducted with only reasonable articulable suspicion and without a warrant violated appellant’s Fourth Amendment rights.

. The court of appeals in Davis had also considered whether the dog sniff was a search under the Fourth Amendment and concluded that it was not because Davis did not have a reasonable expectation of privacy in the common hallway of the apartment building. State v. Davis, 711 N.W.2d 841, 845 (Minn.App.2006), aff'd, 732 N.W.2d 173 (Minn.2007). The supreme court did not consider whether the dog sniff was a search under the Fourth Amendment. 732 N.W.2d at 176 n. 5.

. The legislature also recognizes that doorsteps, stoops, perimeter doors and windows, and their frames "are limited common elements allocated solely to the. unit or units served.” Minn.Stat. § 515B.2-109 (d) (2014).